OPINION OF THE COURT
Donald P. DeRiggi, J.
FINDINGS OF FACT
On December 9, 1998, Police Officer Noel Clifford of the Nassau County Police Department went to 350 Uniondale Avenue, Uniondale, New York, with Probation Officer John Cleva and Police Officer George Hoeler. Probation Officer Cleva was going to execute an arrest warrant for violation of probation on the person of Dean Persons and the two police officers were there *191 to assist him. 350 Uniondale Avenue is a building which consists of a manufacturing entity on the ground floor and a residential unit on the second floor.
John Cleva had been a member of the Nassau County Probation Department for 28 years and was assigned the task of executing the arrest warrant pertaining to the defendant. Before embarking on the task, he spoke to the defendant’s probation officer, Arlene Perry, who told him that she had violated the defendant because of positive traces of cocaine in his urine tests. She told Mr. Cleva that she believed the defendant was heavily involved with drugs and that he had refused to get drug treatment as she had directed, him to do and thereafter he stopped reporting to probation.
The defendant, upon being placed on probation on March 28, 1997, signed a condition form which includes a term to the effect that he was agreeing to a search of his person and his residence by a probation officer. The defendant’s conviction was for driving while intoxicated. A document was received into evidence as a business record indicating that the defendant was given a copy of the conditions of probation on April 17, 1997 and that those conditions were read and explained to him.
As Probation Officer Cleva and Police Officer Hoeler and Police Officer Clifford approached 350 Uniondale Avenue, Union-dale, they saw the defendant standing outside of the entrance doorway. They made a U-turn and saw the defendant enter the building. The officers exited their vehicle and opened the outside door to the premises. The defendant was on the other side of the doorway and he was asked if he was Dean Persons. He responded in the affirmative whereupon he was told that he was under arrest for violating probation. He was promptly searched and a crack pipe was found in one of his pockets.
The defendant, following his arrest, was handcuffed and placed into the police vehicle. Thereafter, Probation Officer Cleva and Police Officer Clifford went up the stairs to the second floor and there observed an apartment with its door open. Probation Officer Cleva knocked on the door and saw a male in one of the interior rooms. Officer Cleva entered the apartment and asked this individual if Dean Persons lived there. The individual, Mr. Gressa, responded that it was his apartment and that he rented a bedroom to Mr. Persons. He pointed to the bedroom on the left and the officers proceeded toward that room. The apartment consists of a kitchen, bathroom and bedroom on the left side and a living room and bedroom on the right side. Upon nearing the bedroom they *192 observed a woman seated on a bed inside the room. She identified herself as Cathy Shea. She was asked if the defendant lived there and she responded that he did. Officer Cleva entered the room and told her that he was a probation officer, that he had just arrested the defendant and that the conditions of the defendant’s probation authorized him to search the defendant’s residence. Ms. Shea responded, “alright, go ahead”. The room was then searched and various drugs and drug paraphernalia were found. Some of these items were in “open view” on the floor, bed, bookcase and on a tray. Ms. Shea said that she did not know anything about the items and that they should ask Mr. Persons about them. She was then arrested.
Detective Carl Re of the first squad interviewed the defendant on December 9, 1998 beginning at about 10:00 p.m. The defendant was read his Miranda rights and stated that he understood them and he agreed to speak to the detective without the benefit of an attorney. The defendant was not threatened, coerced and no promises were made to him, according to Detective Re.
The defendant stated that on that date, December 9, 1998, he resided at 350 Uniondale Avenue, Uniondale, New York, and that soon after he left his apartment and went downstairs, he was arrested by several police officers. He stated that the contraband in the apartment belonged to him and that his wife Cathy was not responsible for it.
Detective Re was informed that the defendant was arrested on a violation of probation warrant and that when he was initially searched, a crack pipe was found on his being.
The defendant was given his Miranda warnings at about 10:20 p.m. Detective Re thereafter told him that both he and Cathy Shea would be arrested unless one admitted ownership. The defendant replied that the contraband was his and that Ms. Shea was not involved. Cathy Shea was released after the defendant signed his statement.
While the defendant had told Detective Re that he was a crack user, the defendant appeared to respond appropriately to all the questions from the detective. He appeared normal, spoke coherently and did not exhibit any signs of being under the influence of drugs or alcohol.
The People introduced a certified copy of the minutes of sentence of March 28, 1997 and a certified copy of the conditions of probation of that date.
The defendant called Christina Yannucci, a Legal Aid attorney, as his witness. She testified that Legal Aid was as *193 signed to represent the defendant in December of 1996 when he was charged with driving while intoxicated and aggravated unlicensed operation of a motor vehicle. Ms. Yannucci did not represent the defendant at the sentencing of March 28, 1997 when he was placed on probation and fined. She did state that the defendant failed to pay his fine and a warrant was issued for his arrest and that Legal Aid did represent him when he was returned to court. When the defendant was again arrested on December 9, 1998 and charged with violation of probation and for violating the drug possession laws (the current charges) Legal Aid represented him at the arraignment. The case was later sent to a Legal Aid part for conference. Legal Aid did not put in a new notice of appearance for the defendant on the violation of probation and there is no record of them being assigned by the Judge to represent the defendant either on those charges or on the new charges. Mr. Galison later submitted a notice of appearance for the defendant.
CONCLUSIONS OF LAW
Coercion
When the police entered the defendant’s apartment, Cathy Shea was seated on a bed. The police proceeded to search the room and found drugs and other contraband, on the floor, on the bed, on a bookcase and on an exposed tray. The defendant later admitted to ownership.
The defendant argues that the police officer’s statement to him, that both he and Ms. Shea would be charged with drug possession unless he admitted ownership, amounted to undue coercion and thereby rendered his statement involuntary.
Where the basis for the police officer’s statement to a defendant is a valid and justifiable one, the defendant’s subsequent admission is not deemed to be involuntary. In People v Glasper (160 AD2d 723 [2d Dept 1990]), the police correctly told the defendant that his version of the events was in conflict with another witness and in People v Vila (208 AD2d 781 [2d Dept 1994]) the police showed the defendant an accomplice’s statement incriminating him. In both, the Courts held that these actions did not render the subsequent confession a product of improper psychological coercion. There are also cases upholding consent searches where the police officer’s statements to a confessing defendant were based upon a valid legal premise and a sound basis to carry out their threats existed. (People v LaDuke, 206 AD2d 859 [4th Dept 1994]; People v Storelli, 216 *194 AD2d 891 [4th Dept 1995].) The common theme in these cases, whether the issue be police conduct in inducing a constitutional waiver with respect to a search or right to counsel, is the existence of a valid and sound basis for that conduct.
Section 220.25 (2) of the Penal Law states that the presence of a narcotic drug, etc., in open view in a room is presumptive evidence of knowing possession by each person in close proximity. Therefore the police officer’s statement to the defendant was a valid and correct one and it follows that the defendant’s subsequent admission is not the product of any improper psychological coercion.
Consent to Search Provision of Conditions of Defendant’s Probation
At the time of the search, the defendant was on probation for a conviction for driving while intoxicated. One of the conditions of his probation, as acknowledged by his signature on said conditions, was “submit to a warrantless search of your person, property or residence by the probation officer.”
While defendant was on probation, he tested positive for the use of drugs. A violation of probation was filed and a warrant signed. The defendant was arrested outside his apartment and the probation officer and police then searched his apartment pursuant to the consent to search condition of his probation. During that search, drugs and drug paraphernalia were seized.
The courts have upheld this condition of probation in the context of the “probationary goal of rehabilitation.” (People v Hale, 93 NY2d 454, 460 [1999].) However, there must be a reasonable nexus between the conviction and the imposition of such provision. In the case at bar, the goals of rehabilitation of and the prevention and/or detection of substance abuse by the defendant were contemplated by this provision.
Accordingly, this court finds that the condition of probation permitting a search of defendant’s residence was reasonable and appropriate in this case.
The defendant contends however that even if the condition is valid, the fact that the defendant was arrested on the violation of probation immediately prior to the search, voided the conditions of probation and they were, therefore, not in effect once the arrest was made. In essence he is contending that once a probationer is charged with violating his probation, he is no longer on probation or subject to the terms and conditions of his probation. The defendant refers the court to Penal Law § 65.15 (2) as support for his argument.
*195 Penal Law § 65.15 (2) provides for a tolling of the period of probation upon the filing of a declaration of delinquency until a final determination on the violation has been made. The question is, therefore, whether the tolling of the time period of probation also means that the violator is no longer either on probation for that period or subject to the terms and conditions of probation. After a review of the applicable, case law and statutes, this court has determined that the violator is still subject to probation while awaiting a final determination regarding his violation.
CPL 410.50 (1) and (2) state that a person who is under a sentence of probation is in the legal custody of the court pending expiration or termination of the period of probation and that during such period of legal custody, the Probation Department has the duty of supervising the defendant. Therefore, until such sentence of probation has been terminated by the court or such term of probation has expired, a defendant is still subject to the terms and conditions of his probation. The tolling provision provides only for the extension of the actual period of probation and does not authorize the suspension of the conditions which can only be done by an order of the court terminating the sentence of probation. Further, in this case, as no evidence was presented regarding the filing of a declaration of delinquency, Penal Law § 65.15 (2) is not applicable. The issuance of a warrant, without the filing of a declaration of delinquency, does not toll the period of probation. (People v Simmons, 169 Misc 2d 223 [Sup Ct, NY County 1996].)
Finally, in People v Brown (114 AD2d 1035 [2d Dept 1985]), the Court upheld a search predicated upon the condition of probation authorizing same, which was conducted subsequent to the defendant’s arrest on a warrant. In that case, as here, the arrest of the probationer did not occur in his home and the search of defendant’s residence was conducted by the probation officer and police officer after the defendant was arrested.
Right to Counsel
At the hearing, defendant raised the argument that since he was represented by counsel (Legal Aid) on the original charges for which he was placed on probation (DWI) and since the same office appeared for him when he was later arrested for failing to pay his fine, that it should follow that this same law firm continue to represent him upon his subsequent arrest for violation of probation. Counsel further argued that since the violation of probation charges and the drug charges were related in *196 that the possession of drugs could form the basis for an amended charge of violation of probation, that the questioning on the case wherein he did not have counsel (drug possession) would directly affect the case where he did have counsel (violation of probation). (People v Grant, 91 NY2d 989 [1998].)
It is not necessary to discuss whether or not the contents of the violation of probation charge and the drug charges which arose at the time of the arrest on December 9, 1998 were related and whether questioning of one was exploitive of the other (People v Grant, supra) because the argument that the defendant was represented by counsel on the violation of probation charges must fail. “When a prior charge has been disposed of by dismissal or conviction, the indelible right to counsel disappears and the defendant is capable of waiving counsel on the new charge.” (People v Bridges, 226 AD2d 471 [2d Dept 1996].)
It is clear therefore that the defendant did not have counsel on the violation of probation charge when he was arrested on December 9, 1998. Neither the cases on the subject nor the evidence presented at the hearing establish that counsel on an original charge continued to represent the defendant when he is later arrested on a violation of probation. Indeed the practice of the court is that, upon arraignment upon a subsequent violation of probation, the entire retention or assignment of counsel process begins anew.
The testimony establishes that the defendant was fully apprised of his Miranda warnings, that he knowingly, intelligently and voluntarily waived these rights and that he agreed to speak to the police without the presence of an attorney.
Accordingly, based upon the foregoing the defendant’s applications to suppress the property seized from his home and person and his statement to the police are denied.